UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**EUGENE ROBINSON,**

               **Plaintiff,**

vs.                                               **Case No. 8:04-cv-1297-T-MSS**

**JO ANNE B. BARNHART, COMMISSIONER
OF SOCIAL SECURITY,**

               **Defendant.**
_____/

## ORDER

Plaintiff brings this action pursuant to the Social Security Act (the "Act"), as amended, Title 42, United States Code, §§ 405(g) and 1383(c)(3), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying claims for supplemental security income under the Act.[1]

The Undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge ("ALJ"), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case.

---

[1] The parties have consented to proceed before the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636 (c) and the district court has referred the matter for final disposition.

**I.     BACKGROUND**

    A.  Procedural History

Plaintiff filed for Supplemental Security Income ("SSI") on August 15, 2002. (T. at 9). Plaintiff alleged an onset of disability beginning August 1, 2002, due to back problems, diabetes mellitus and obesity. (T. at 9-10). Plaintiff's application was denied initially and on reconsideration. (T. at 9). A hearing was held on February 20, 2004, and the claim was denied by the ALJ on September 20, 2000 (the "ALJ Decision"). (T. at 18). On May 12, 2004, the Appeals Council denied review of the ALJ Decision, making the ALJ Decision the final decision of the Commissioner. (T. at 3-5). On July 31, 2004, Plaintiff filed this action for review.

    B.  Medical History and Findings Summary

Plaintiff's relevant medical history is set forth in the ALJ's Decision. Plaintiff's medical records indicate that he has non-insulin dependant diabetes mellitus, coronary artery disease, morbid obesity, hypertension, reflux disease, headaches and depression. (T. at 14). Plaintiff was seen by Dr. Limba Pansara on September 9, 2002, for his complaints of diabetes mellitus, hypertension, back pain and asthma. (T. at 10). Shortly thereafter, Plaintiff was examined by Dr. Ricardo Cervantes who diagnosed him with back pain, diabetes mellitus, non-insulin dependant, obesity and an old fracture of the left leg. (T. at 11). Between February 10, 2003, and April 24, 2003, Plaintiff was treated at Mental Heath Care for "adjustment disorder." (T. at 11). Plaintiff had been incarcerated for seven years, and having been released only recently, was having trouble adjusting to life outside prison. (T. at 11).

In late March 2003, Dr. Teresito Alquizola, a psychiatrist, conducted a psychiatric evaluation on Plaintiff. Plaintiff reported hearing voices telling him derogatory things about himself and that he felt like hurting others. (T. at 12). Dr. Alquizola diagnosed Plaintiff with bipolar affective disorder, placed him on Seroquel and assigned him a Global Assessment of Functioning Scale ("GAF") of 55. (T. at 12). On April 24, 2003, mental status examinations showed Plaintiff as having appropriate emotions and his GAF improved from 55 to 70. (T. at 12). On June 8, 2003, Plaintiff was examined in the emergency room for chest pain. (T. at 12). While myocardial infarction was ruled out, Plaintiff underwent percutaneous transluminal coronary angioplasty to the left anterior descending artery and was placed on Plavis and Lipitor. (T. at 12). In addition, Plaintiff was advised to continue taking Metformin, Depakote, Paxil, Seroquel, Lisinopril, Lasix, Percocet and Glyburide. (T. at 12). In late June of 2003, Plaintiff returned to Dr. Alquizola and reported "feeling much better." (T. at 12). Dr. Alquizola noted that the medication was helping and urged Plaintiff to continue taking his prescribed medication. (T. at 12). Plaintiff subsequently received two more mental status ratings of 70 from Dr. Alquizola on June 23, 2003 and September 22, 2003, respectively. (T. at 12-13). On December 15, 2003, during a follow up visit with Dr. Alquizola, Plaintiff informed the doctor that he was "alright" and was taking all medications, except that he had run out of Seroquel. (T. at 13). Plaintiff's prescriptions were refilled and he was advised to return for follow up care in three months. (T. at 13).

On January 5, 2004, Plaintiff visited the office of Dr. Vincent K. Farrier. Plaintiff had been seeing Dr. Farrier on and off beginning in May 2003 for various ailments. (T. at 12-13). During Plaintiff's visit various labwork was conducted, which Dr. Farrier reviewed with Plaintiff during a January 16, 2004 follow-up visit. Plaintiff's labs indicted that Plaintiff's

3

blood sugar was elevated. (T. at 13). Plaintiff informed Dr. Farrier that he was under a great deal of stress as his house was falling apart and he had no money to fix it. (T. at 13). Dr. Farrier added Avandia to Plaintiff's medication regime. (T. at 13).

After considering the evidence, including medical records from Plaintiff's treating and examining physicians, the ALJ found that Plaintiff had non-insulin dependant diabetes mellitus, coronary artery disease, morbid obesity, hypertension, reflux disease, headaches and depression, which he considered to be severe impairments. (T. at 14). However, Plaintiff did not have an impairment that "met or medically equaled" one listed in Appendix 1, Subpart P, Regulations No. 4 and, thus, was not disabled based on a listing. (T. at 14). The ALJ found Plaintiff retained a residual functional capacity ("RFC") for a restricted range of light work, but, based on vocational expert ("VE") testimony, found that Plaintiff could not perform his past relevant work as a heavy equipment operator. (T. at 15-16). The VE listed several jobs that Plaintiff could perform in the national economy, and the ALJ ultimately found the Plaintiff had not been under a "disability" as defined in the Act. (T. at 18).

## II. STANDARD OF REVIEW

In an action for judicial review, the reviewing court must affirm the decision of the Commissioner if it is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). If there is substantial evidence to support the Commissioner's findings, this Court may not decide the facts anew or substitute its judgment as to the

weight of the evidence for that of the Commissioner.  See Goodley v. Harris, 608 F.2d 234, 236 (5th Cir. 1979).

No similar presumption of validity attaches to the Commissioner's legal conclusions; rather the Court reviews the application of law *de novo*.  See Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993).   If an error of law was committed by the Commissioner, the case must be remanded to the Commissioner for application of the correct legal standard. See McDaniel v. Bowen, 800 F.2d 1026, 1029-1030 (11th Cir. 1986); Smith v. Heckler, 707 F.2d 1284, 1285 (11th Cir. 1983).  If the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then a remand to the Commissioner for clarification is required.  See Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987).

Against this standard, Plaintiff alleges the ALJ did not adequately follow the five step sequential evaluation process, more specifically, that (1) the ALJ did not articulate good cause for failing to credit Plantiff's subjective complaints under the pain standard, (2) the ALJ failed to consider all of Plaintiff's severe impairments, and (3) the ALJ did not properly consider vocational expert testimony.

For the reasons that follow, the Undersigned **ORDERS** that the decision of the Commissioner be **REMANDED.**

### III. DISCUSSION

A. Whether the ALJ Properly Discounted Plaintiff's Subjective Complaints of Pain and  Non-exertional Effects of Prescribed Medication

Plaintiff asserts that the ALJ failed to evaluate his non-exertional impairments, as he subjectively reported, against the Eleventh Circuit's pain standard.  (Pl. Br. at 10).

5

Plaintiff complains that he needs to urinate frequently as a result of his medication. (T. at 13). Further, Plaintiff states that he is no longer depressed, but his medication causes him to fall asleep if he stands for as little as twenty minutes or sits for thirty to forty minutes. (T. at 13).

The standard for evaluating subjective evidence of pain in disability cases requires the ALJ to credit a claimant's subjective pain testimony if there is (a) evidence of an underlying medical condition <u>and</u> (b) either (1) objective medical evidence to confirm the severity of the alleged pain <u>or</u> (2) that the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain. <u>Mason v. Bowen</u>, 791 F.2d 1460, 1462 (11th Cir. 1986)(emphasis added). This standard also applies to other subjective complaints. <u>Holt v. Sullivan</u>, 921 F.2d 1221 (11th Cir. 1991).

Under the alternate prong of the pain standard, subjective pain testimony which is supported by clinical evidence of a condition that can reasonably be expected to produce the symptoms of which Plaintiff complains is itself sufficient to sustain a finding of disability. This prong requires the ALJ to evaluate the credibility of a claimant's testimony as to pain and to articulate a reasonable basis for rejecting the testimony if it is rejected. <u>Sewell v. Bowen</u>, 792 F.2d 1065, 1068 (11th Cir. 1986). If the ALJ rejects a claimant's testimony regarding complaints of pain, he must articulate "explicit and adequate reasons" for doing so. <u>Foote v. Chater</u>, 67 F.3d 1553, 1561 (11th Cir. 1995). Further, the articulated reasons for discrediting a claimant's testimony must be supported by substantial evidence. <u>Hale v. Bowen</u>, 831 F.2d 1007, 1012 (11th Cir. 1987). Failure to articulate reasons for rejecting a claimant's testimony requires that the testimony be accepted as true as a matter of law.

Foote, 67 F.3d at 1562.  The same is true if the articulated reasons for discrediting the testimony are not supported by substantial evidence.  Hale, 831 F.2d at 1012.

In reviewing the ALJ's Decision, the Court must first determine as a matter of law whether the ALJ applied the correct legal standard in evaluating Plaintiff's complaints of pain and other subjective symptoms.  See Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987).  If the Court finds that the ALJ applied the correct legal standard, the Court must determine whether the ALJ's finding that a claimant does not meet the Mason pain standard is supported by substantial evidence.  See Id.   The Court may not disturb the ALJ's credibility finding if it is clearly articulated and supported by substantial evidence. See Foote, 67 F.3d at 1562.

In this case, the ALJ found that Plaintiff did not meet the second prong because his testimony regarding his impairments and their impact on his ability to work was not credible in light of the medical documentation contained within the record.  (T. at 14).  The ALJ articulated his reasons for discrediting Plaintiff's testimony in great detail, specifically addressing several discrepancies between claimant's assertions and the medical evidence.  The ALJ stated:

> Although [Plaintiff] complains of chronic back pain, examinations have been essentially negative except for mild forward flexion of the lumbar spine due to obesity. There is no evidence of gait disturbance. While [Plaintiff] did have a fracture of his left leg in the 1980's, there has been no recent treatment for his left leg problem. During examination, he was able to walk on his toes, rise from a chair and get on an [sic] off the examining table without assistance.  Further, the evidence is devoid of him needing an assistive device for ambulating.  He does not have any end organ damage related to his diabetes mellitus and hypertension.  In June 2003, [Plaintiff] did undergo percutaneous transluminal coronary angioplasty

> to the left anterior descending artery. However, the evidence thereafter is devoid of any complaints of chest pain when seen by Dr. Farrier for follow-up care. With respect to headaches reported by [Plaintiff], there is no evidence of record that has demonstrated underlying pathology. . . .Regarding [Plaintiff's] mental status the Administrative Law Judge notes that the condition is being controlled with medication. [Plaintiff] testified at the hearing that he was no longer depressed since being on medication.

(T. at 14-15).

The ALJ ultimately found that because Plaintiff's allegations were not credible in light of the above discrepancies, Plaintiff was not credible with respect to allegations of additional symptoms or limitations. (T. at 17).

The ALJ did not, however, address Plaintiff's complaints that he needed to urinate as frequently as every half hour throughout the entire work day. (T. at 196-197). Nor did the ALJ address Plaintiff's complaints of drowsiness and fatigue as a result of his various medications. The Commissioner responds that the ALJ did address Plaintiff's complaints by making references to the medical record, which the Commissioner contends does not contain any reports of these issues to doctors who treated Plaintiff. Additionally, the Commissioner points to two entries in the record that show Plaintiff denied "side effects" due to medication.

These justifications for the ALJ's failure to address Plaintiff's non-exertional limitations are problematic for two reasons. First, the Court can only consider the ALJ's articulated reasons for rejecting a claimant's assertions. See Owens v. Heckler, 748 F.2d 1511, 1514 (11th Cir. 1984)(stating that the scope of review is limited to "determining whether there is substantial evidence in the record as a whole to support the Secretary's

8

findings")(emphasis added).  Here, the ALJ did not address the Plaintiff's concerns of frequent urination and drowsiness at all.  Secondly, the Plaintiff's failure to include as a "side effect" his frequent urination due to Lasix is entirely appropriate.  Lasix is a diuretic, its principal purpose is to cause the user to pass water or urinate.  Thus, frequent urination is not a side effect of Lasix, it is the effective outcome for which Lasix is prescribed.

As Plaintiff points out, the VE testified that an employee starting out in any of the "thousands" of identifiable jobs could not take any more than an occasional (1 - 2 times a week) unscheduled break above and beyond the standard twice a day breaks these jobs generally permit. (T. at 211).  In sum, having to take a break every thirty minutes to an hour to urinate and having to rest as frequently as alleged would render Plaintiff unemployable according to the VE.

Thus, while the ALJ technically met the pain standard requirement by issuing a blanket statement discounting Plaintiff's complaints of pain, the attempt to discredit Plaintiff's complaints of the effects of his medication ultimately falls short.  The ALJ made a general finding that "claimant's statements concerning his impairments and their impact on his ability to work not entirely credible in light of discrepancies between the claimant's assertions and information contained in the documentary reports."  However, he did not adequately articulate any reasons for concluding that Plaintiff's complaints of frequent urination and drowsiness were not credible.  (T. at 14).

Accordingly, the Undersigned orders that this case be **REMANDED** to the ALJ for consideration of Plaintiff's complaints of frequent urination and drowsiness and to evaluate the extent to which Plaintiff's urination problem carries forward throughout the work day. Either party on remand may submit additional evidence or testimony on this issue.

Because the Court directs that this matter be remanded on the initial ground asserted, it is not necessary or appropriate to address the remaining issues. The Court would simply note that the ALJ must address both singularly and in combination any new or additional impairments that may be found on remand and must consider their impact on Plaintiff's ability to work. Additionally, as he did in this instance, the ALJ should include any such finding in a hypothetical to the VE if additional VE testimony is deemed necessary.

## IV.     CONCLUSION

For the foregoing reasons, this case is **REMANDED** under sentence four of 42 U.S.C. § 405 (g). Remand under sentence four is appropriate so that the ALJ can re-hear this case, including any evidence to support a disability finding. The Clerk is directed to enter a separate judgment in favor of Plaintiff and close this case.

**DONE AND ORDERED** in Tampa, Florida on this 28th day of September 2005.

_____
MARY S. SCRIVEN
United States Magistrate Judge